MYERS, P.J., for The Court.
 

 ¶ 1. This case is before the Court on appeal from the Harrison County Chancery Court’s December 16, 2008, entry of final judgment of a will contest following a jury’s unanimous finding that Helen Vick-ery, the will’s testator, lacked testamentary capacity to make a will, and had been subject to undue influence from Glendy Vickery at the time she executed the will. Consequently, the chancery court entered an order striking down the will, holding it for naught, withdrawing all Letters Testamentary from Glendy, and vacating the judgment admitting the will to probate.
 

 ¶ 2. Prior to trial, Glendy had filed two separate motions for summary judgment asserting that his brother, George Vickery, the will’s objector, was barred from contesting the will. The first motion asserted the affirmative defense of accord and satisfaction; the second motion raised the defense of estoppel. The chancery court denied each motion in turn.
 

 ¶ 3. Glendy appeals from the final judgment entered on the will contest, and reasserts that George was barred from contesting the will under the doctrine of accord and satisfaction and/or the doctrine of estoppel.
 

 ¶ 4. Glendy presents the three following issues on appeal:
 

 I.Whether George was barred under the doctrine of accord and satisfaction from maintaining a will contest due to his acceptance of the total $30,000 inheritance under the will which he thereafter challenged;
 

 II. Whether George was barred under the doctrine of estoppel from maintaining a will contest due to his acceptance of his $30,000 inheritance under the will which he thereafter challenged;
 

 III. If the will contest was barred under accord and satisfaction and/or estop-pel, whether Glendy waived his right to assert such affirmative defenses.
 

 ¶ 5. Finding no error with the chancery court’s decision, we affirm.
 

 FACTS
 

 ¶ 6. Glendy and George are the sons of the late Dr. George Vickery, Sr., who died in the late 1970s. Helen, the deceased testator, was Dr. Vickery’s second wife and the stepmother of the two brothers, Glendy and George. Helen had a series of wills in her lifetime affecting her estate. Two of those wills shape the controversy between the brothers.
 

 ¶ 7. The contested will had been executed by Helen on October 22, 2004, and it was petitioned for probate by Glendy on December 11, 2005, following Helen’s death on November 22, 2005. Helen’s previous will was executed on August 16, 2000, and it is currently before the chancery court. According to George, although the 2000 will “more or less” divided the estate
 
 [1]
 
 equally between the two brothers, the 2004 will only provided a bequest to him for $30,000.
 
 [2]
 

 
 *618
 
 ¶ 8. Events pertinent to the matter before us began on November 26, 2005, shortly after Helen’s burial, when the two brothers met at Glendy’s home in Gulfport, Mississippi. There, Glendy showed George the 2004 will, which, up until that point, George did not realize existed. Glendy then handed George a check for $30,000 from a checking account that Glen-dy allegedly had maintained with Helen.
 
 [3]
 
 Located at the bottom left hand corner on the face of the check were the handwritten words “per HCV Will.” George accepted the check, crossed out the notation, and initialed his mark. According to George, he did so because he intended to contest the 2004 will. He thereafter negotiated the check on the basis that he knew that the $30,000 would be due to him regardless of which will was ultimately accepted.
 

 ¶ 9. The letters testamentary was issued on December 13, 2005, and George filed an objection to the petition to probate on January 6, 2006, raising a question of testamentary capacity.
 
 [4]
 
 Glendy filed his answer and defenses on September 20, 2006, in which he raised the affirmative defense of accord and satisfaction.
 

 ¶ 10. For the next two years, the parties engaged in protracted and voluminous discovery. The case eventually was set for trial to begin on February 13, 2008. It was continued from that date to June 25, 2008. But due to a problem seating a jury, it was continued once more to December 8, 2008. Trial began on that date, and concluded on December 12, 2008. A jury consisting of twelve members unanimously found that on October 22, 2004, Helen lacked testamentary capacity to make a will. They also found that Helen was in a confidential relationship with Glendy; thus, Helen was subject to the undue influence of Glendy at the time she executed the will.
 

 ¶ 11. Prior to trial, Glendy had filed two motions for summary judgment. The first was filed on June 9, 2008, and asserted the affirmative defense of accord and satisfaction. On June 25, 2008, the chancery court denied the motion on the basis that Glendy had waived the defense by not bringing it for consideration in a timely manner. The chancery court also held that accord and satisfaction was an inappropriate affirmative defense in “this will contest.” Glen-dy’s second motion for summary judgment was filed on November 6, 2008. In the motion, he raised the affirmative defense of estoppel, after having amended his initial answer and affirmative defenses on October 8, 2008, to include the defense. The chancery court denied that motion on December 1, 2008, based on a finding that Glendy had waived the defense by not raising it until almost three years after the beginning of this action.
 

 ¶ 12. At the conclusion of trial, and upon receiving the jury’s verdict, Glendy made an ore tenus motion for a judgment notwithstanding the verdict based upon insufficiency of the evidence. That motion was denied from the bench.
 

 ¶ 13. Glendy noticed his appeal on December 23, 2008, and then filed an amended notice of appeal on December 29, 2008. The amended notice of appeal reflects that “the matters encompassed in this appeal specifically include (but are not limited to) appeal of the Order Denying Motion for
 
 *619
 
 Summary Judgment and Motion for Continuance entered by the Chancery Court ... on June 25, 2008, and appeal of the Order Denying Motion for Summary Judgment and Motion for Continuance entered by the Chancery Court ... on December 1, 2008.”
 

 ¶ 14. According to George, Glendy designated the record on appeal and designated only selected items from the clerk’s papers in the way of various motions, orders, and briefs; however, he failed to designate any part of the trial transcript in contravention to Mississippi Rule of Appellate Procedure 10(a). Thus, we are without the trial transcript.
 

 STANDARD OF REVIEW
 

 ¶ 15. The appellate court reviews a trial court’s decision to grant or deny a motion for summary judgment de novo.
 
 City of Jackson v. Sutton,
 
 797 So.2d 977, 979(¶ 7) (Miss.2001). The moving party has the burden of demonstrating that no genuine issue of material fact exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact.
 
 Id.
 
 “If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in that party’s favor.”
 
 Monsanto Co. v. Hall,
 
 912 So.2d 134, 136(¶ 5) (Miss.2005).
 

 DISCUSSION
 

 I. Whether George was barred under the doctrine of accord and satisfaction from maintaining a will contest due to his acceptance of the total $30,000 inheritance under the will which he thereafter challenged.
 

 ¶ 16. Glendy cites no authority that has approved the doctrine of accord and satisfaction in a will contest, and we have been unable to locate any Mississippi precedent that contemplates the doctrine’s applieability in this type of matter. Assuming ar-guendo that the affirmative defense was theoretically available, we nonetheless think that the facts of this case negate Glendy’s claim to it.
 

 ¶ 17. Typically, the doctrine has long been understood to apply in matters where a debtor and creditor relationship exists.
 
 See, e.g., Cooper & Rock v. Yazoo & M.V.R. Co.,
 
 35 So. 162, 163, 82 Miss. 634, 644 (1903) (“The debtor making tender of a certain sum in full satisfaction has the right to attach to his tender such lawful conditions as he pleases, and the creditor accepting under such circumstances must accept the tender as conditioned.”).
 
 See also Roberts v. Finger,
 
 227 Miss. 671, 677-78, 86 So.2d 463-65 (1956) (“One of the essential elements of an accord and satisfaction is an agreement, or a meeting of the minds of the parties. This agreement must have all the essentials of a contract and may be express[ed], or implied from the circumstances. Accord, or the agreement, precedes satisfaction, which is the execution of the agreement, resulting in accord and satisfaction.”). The supreme court has since expounded further on what establishes accord and satisfaction, and it has provided us with four basic conditions that must be satisfied in order to succeed on the claim: “(1) [sjomething of value is offered in full satisfaction of the demand; (2)[t]his act is accompanied by acts or declarations which amount to a condition that if the thing offered is accepted, it is accepted in satisfaction; (3)[t]he party offered the thing of value is bound to understand that if the thing offered is accepted, it is accepted in satisfaction of the total debt; and (4)[t]he party actually does accept the item.”
 
 Alexander v. Tri-County Coop. (AAL),
 
 609 So.2d 401, 404-05 (Miss.1992) (citing
 
 Lovorn v. Iron Wood, Prods. Corp.,
 
 362 So.2d 196, 197 (Miss.1978)).
 

 
 *620
 
 ¶ 18. Looking at
 
 Alexander,
 
 this case fails to pass the first condition. As the facts attending this case demonstrate, at the time Glendy offered George the $30,000 check there was no demand by George that Glendy do so. And, as George correctly points out in his brief, nor could there be one. When George was presented with the 2004 will, probate proceedings had yet to begin. Glendy, at this stage, was merely the custodian of Helen’s will, and his obligation to George only extended to producing the will and having it probated.
 
 See, e.g., Caulk v. Burt, 112
 
 Miss. 660, 73 So. 618 (1917). In our opinion, the necessary relationship contemplated by the doctrine of accord and satisfaction was lacking in this instance.
 

 ¶ 19. That said, substantive merits — if any — of this claim aside, we find no abuse of discretion with the chancellor’s finding that Glendy had waived the defense. According to our supreme court, “[a] defendant’s failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver.”
 
 MS Credit Center, Inc. v. Horton,
 
 926 So.2d 167, 180(¶ 44) (Miss.2006).
 

 ¶ 20. In its order denying Glendy’s motion for summary judgment, the chancery court found that although Glendy had raised the affirmative defense of accord and satisfaction in his initial answer, he did not bring the defense forward for consideration until June 9, 2008, a delay of almost two years.
 

 ¶ 21. Glendy’s justification for the delay was that this was the earliest possible junctux-e in which he could have successfully moved for summai'y judgment; according to him, this was due to the “particulars” of this type of defense. Glendy contended that he drafted a motion for summary judgment in 2007, but he took no action then because he had concluded that in order to prevail on the motion, additional proof might be necessary. This required deposing George and George’s wife, Carol Vickery, in order to establish that George understood that the check for $30,000 he accepted constituted his inheri--tance under the subsequently challenged will. We find this reason unavailing.
 

 ¶22. Glendy’s assei’tion on appeal to the contrary, the chancellor found no fault with Glendy’s willingness to obtain whatever additional evidence he thought necessary for his claim to succeed, just his effort in doing so. The l'ecord befoi’e this Court supports the chancellor’s sentiment.
 

 ¶ 23. In his motion for summary judgment, Glendy ax-gued that the deletion of the notation on the check by Geoi’ge “demonstrated” George’s understanding that the check was intended for the full satisfaction of his inheritance. This factually uncomplicated act occurred in late 2005; George petitioned to contest the will in early 2006; and Glendy, for reasons not disclosed in the record, filed his answer and affirmative defenses approximately nine months later. Yet, it was not until 2007, when he had first contemplated bringing the matter forward for considei'-ation, that Glendy decided it was necessary to depose George and his wife in the hopes of attaining additional evidence to suppoi't his claim of accord and satisfaction. According to the record, it then was not until February 2008, when Glendy’s counsel requested dates for their depositions, that Glendy finally acted on his inclination to obtain corroborating evidence.
 

 ¶ 24. Glendy provided no explanation to the chancery court as to why he did not, or could not, utilize the diseovexy procedures he had available to him sooner than Febru
 
 *621
 
 ary 2008 to obtain corroboration for what he vehemently maintains was established, proof of accord and satisfaction — the negotiated check with George’s deletion of the notation on the check.
 

 ¶ 25. Accordingly, we find no error with the chancery court’s finding that Glend/s participation in the litigation process, coupled with his failure to timely pursue this affirmative defense, constituted a waiver.
 
 Horton,
 
 926 So.2d at 180(1144). Therefore, we affirm the chancery court’s judgment dismissing his motion for summary judgment.
 

 II. Whether George was barred under the doctrine of estoppel from maintaining a will contest due to his acceptance of his $30,000 inheritance under the will which he thereafter challenged.
 

 III. If the will contest was barred under accord and satisfaction and/or estoppel, whether Glendy waived his right to assert such affirmative defenses.
 

 ¶26. The chancery court denied Glen-dy’s motion for summary judgment, which had claimed the affirmative defense of es-toppel, based on a finding that Glendy did not raise the defense in a timely manner.
 

 ¶ 27. This defense sought to “estop” George from contesting the 2004 will based on the very same reasons that Glendy had asserted in his first motion for summary judgment. Yet, according to the record, Glendy did not raise the defense until October 8, 2008, when he filed a motion to amend his initial answer and affirmative defenses — three months after his first summary judgment motion was denied.
 

 ¶ 28. Pursuant to our supreme court’s decision in
 
 Horton,
 
 we find that the chancery court did not abuse its discretion in holding that Glendy had waived his claim to this defense as well. Therefore, we affirm the chancery court’s judgment denying Glendy’s motion for summary judgment.
 

 ¶ 29. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. ISHEE,J., NOT PARTICIPATING.
 

 [1]
 

 . An inventory of Helen's estate was filed with the court on November 20, 2006, which estimated her estate, as of November 22, 2005, to be worth approximately $1,202,696.
 

 [2]
 

 . The 2004 will contains the following provision:
 

 To George Willis Vickery, Jr., I devise and bequeath the sum of $30,000.00. In regard to this bequest, please be advised that it is not through oversight that I have limited this bequest to $30,000.00. This bequest is limited to $30,000.00 for the reason that I have previously provided for George Willis Vickery, Jr. through vivos gifts.
 

 [3]
 

 . According to George, the estate was not opened until December 18, 2005, and he contends in his brief that the true ownership of the funds which had been in that checking account is presently in dispute in the chancery court.
 

 [4]
 

 . With leave of the court, George thereafter filed an amended objection to the petition on December 3, 2007, adding undue influence as another objection.